```
            UNITED STATES DISTRICT COURT
          SOUTHERN DISTRICT OF WEST VIRGINIA
                    AT CHARLESTON
```

ROBERT HARPER, JR.,
MICHAEL B. JAMES,
TED MORRISTON,
JAMES TREADWAY,
JOHN O'NEAL, and
CLIFTON SCOTT,

    Plaintiffs,

v.                                          Civil Action No. 2:11-cv-00305

ELK RUN COAL COMPANY, INC. and
SPARTAN MINING COMPANY,

    Defendants.


## MEMORANDUM OPINION & ORDER

Pending are the parties' joint motion to file under seal their joint motion to approve settlement, and the joint motion to approve settlement itself, filed May 30, 2012.

### I.

On May 4, 2011, plaintiffs brought suit against Massey Energy Company for alleged violations of the Fair labor Standards Act, 29 U.S.C. § 201 et. seq., and the West Virginia Wage Payment and Collection Act, W. Va. Code § 21-5-1. Specifically, plaintiffs alleged that they were entitled to wages for unpaid overtime work as well as damages and interest

for failure to pay wages due and owing within 72 hours of discharge.  On March 15, 2012, plaintiffs filed an amended complaint, dismissing Massey Energy and properly substituting Elk Run Coal Company, Inc. and Spartan Mining Company as defendants.

After some discovery, the parties agreed to voluntarily dismiss the claims of plaintiffs John O'Neal and Clifton Scott.  On May 18, 2012, the remaining parties reached a settlement agreement, and inasmuch as plaintiffs' allegations arise under state and federal wage and hour law, seek the court's approval of the settlement terms.  As summarized by the parties in their joint motion, those terms are as follows:

> Defendants will make payments to the four remaining plaintiffs . . . in the amount of five-thousand dollars ($5,000) each, representing lost wages, attorney's fees and costs.  The plaintiffs will be responsible for any and all tax consequences.  Additionally, the plaintiffs will not seek employment in the future with the defendants or any of their affiliates and the terms of the agreement shall remain confidential.  In exchange, the plaintiffs, upon advice of their attorneys, executed a general release and waiver of claims against the defendants.

(Joint Motion, Dkt. No. 53, at 2).

II.

Considering first the parties' joint motion concerning the confidentiality of the settlement agreement, the court notes that "[p]ublicity of [court] ... records ... is necessary in the long run so that the public can judge the product of the courts in a given case." Columbus-America Discovery Group v. Atlantic Mut. Ins. Co., 203 F.3d 291, 303 (4th Cir. 2000). The right of public access to court documents derives from two separate sources: the common law and the First Amendment. The common law right affords presumptive access to all judicial records and documents. Nixon v. Warner Comms., Inc., 435 U.S. 589, 597 (1978); Stone v. University of Md. Medical Sys. Corp., 855 F.2d 178, 180 (4th Cir. 1988). Submitted documents within the common law right may be sealed, however, if competing interests outweigh the public's right of access. Nixon, 435 U.S. at 598-99, 602-03; In re Knight Publishing Co., 743 F.2d 231, 235 (4th Cir. 1984). Quoting Knight, our court of appeals has observed as follows:

> Some of the factors to be weighed in the common law balancing test "include whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records."

3

*Virginia Dept. of State Police v. Washington Post*, 386 F.3d 567, 575 (4th Cir. 2004) (quoting *Knight*, 743 F.2d at 235).

The First Amendment right of access has a more limited scope than the common law right, having only "been extended . . . to particular judicial records and documents." *Stone*, 855 F.2d at 180. The First Amendment right of access attaches if: (1) "the place and process have historically been open to the press and general public"; and (2) "public access plays a significant positive role in the functioning of the particular process in question." *PressEnterprise Co. v. Superior Court*, 478 U.S. 1, 8-9 (1986) (quoted in *The Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989)).

The First Amendment right of access, however, provides much greater protection to the public's right to know than the common law right. To avoid disclosure under the First Amendment right of access, the movant must show "the denial [of access] is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606-07 (1982); *Press-Enterprise Co.*, 478 U.S. at 15; *Virginia*, 386 F.3d at 573; *Stone*, 855 F.2d at 180.

The Fourth Circuit has further observed that:

4

> Regardless of whether the right of access arises from the First Amendment or the common law, it "may be abrogated <u>only in unusual circumstances</u>." When presented with a request to seal judicial records or documents, a district court must comply with certain substantive and procedural requirements. As to the substance, the district court first "must determine the source of the right of access with respect to each document," because "[o]nly then can it accurately weigh the competing interests at stake."

<u>Virginia</u>, 386 F.3d at 576 (citations omitted) (emphasis supplied).

Regarding procedures for handling sealing requests, our court of appeals has noted:

> First, the judicial officer must "state the reasons for [her] decision to seal supported by <u>specific findings</u>." "The judicial officer may explicitly adopt the facts that the government presents to justify sealing ... [b]ut the decision to seal must be made by the judicial officer." Second, "the judicial officer <u>must consider alternatives</u> to sealing the documents. This ordinarily involves <u>disclosing some of the documents or giving</u> *access to a redacted version*." Third, a judicial officer must give notice to the public by docketing the order sealing the documents. All of these procedures "must be followed when a [judicial officer] seals judicial records or documents."

<u>Media General Operations, Inc. v. Buchanan</u>, 417 F.3d 424, 435 (4th Cir. 2005) (emphasis supplied) (citations omitted).

The burden to support a sealing request rests on the movant regardless of whether the common law or First Amendment rights of access are in issue:

> The common law presumes a right of the public to inspect and copy "all 'judicial records and documents.'" "This presumption of access, however, can be rebutted if countervailing interests heavily outweigh the public interests in access," and "[t]he party seeking to overcome the presumption bears the burden of showing some significant interest that outweighs the presumption ." ...
>
> The burden to overcome a First Amendment right of access rests on the party seeking to restrict access, and that party must present <u>specific reasons in support of its position</u>. See <u>Press-Enterprise Co. v. Superior Court</u>, 478 U.S.1, 15 (1986) ("The First Amendment right of access cannot be overcome by [a] conclusory assertion").

<u>Virginia</u>, 386 F.3d at 575 (some citations omitted).

It matters not in this case whether the defendants' request is subject to the less rigorous common law standard or the more rigorous First Amendment standard, for in this case the parties have failed even to set forth significant competing interests sufficient to heavily outweigh the public's right of access and overcome the presumption of access to all judicial records and documents under the common law.  As earlier noted, the Fourth Circuit has held that the right of access "may be abrogated only in unusual circumstances" regardless of whether the right of access arises from the First Amendment or the common law. <u>Virginia</u>, 386 F.3d at 576.  The court sees no unusual circumstances presented by the defendants in this case

warranting the need for secrecy.  Accordingly, the parties' joint motion to seal must be denied.

### III.

The court now turns to the parties' joint motion to approve the settlement agreement.  The FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours.  Barrentine v. Arkansas-Best Freight System, 450 U.S. 728, 101 S. Ct. 1437, 1444 (1981).  Provisions of the FLSA are mandatory, and "FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." Id. at 1445.  Accordingly, the FLSA permits only two avenues for compromising claims, only one of which is relevant here:[1]  when employees file suit against their employer to recover back wages, the parties must present any proposed settlement to the district court, which may enter a stipulated judgment after scrutinizing the settlement for fairness.  Lynn's Food Stores, Inc. v. United States, 679 F.2d 1350, 1352-53 (11th Cir. 1982)(citing Schulte. Inc. v. Gangi, 328 U.S. 108 (1946)).

---

[1] The other method involves compromises directly supervised by the Department of Labor.

While the Fourth Circuit has not directly addressed the factors to consider in determining whether a settlement reached in an FLSA case is fair and reasonable, federal courts typically consider the fairness factors utilized in determining court approval of class action settlements under Federal Rule of Civil Procedure 23(e). <u>Lomascolo v. Parsons</u>, 2009 WL 3094955, at *11 (E.D. Va. Sept. 28, 2009)(collecting cases). Those class action factors include: (1) the extent of discovery that has taken place, (2) the stage of the proceedings, (3) the absence of fraud or collusion in the settlement, (4) the experience of counsel who have represented the plaintiffs, (5) the opinions of class counsel and class members after receiving notice of the settlement whether expressed directly or through failure to object, and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery. See <u>Flinn v. FMC Corp.</u>, 528 F.2d 1169, 1173 (4th Cir. 1975); <u>see</u> <u>also</u> <u>Lomascolo</u>, 2009 WL 3094955 (applying <u>Flinn</u> factors to FLSA settlement).

Discovery in this case has been completed; in fact this case has reached its culmination, with trial scheduled to commence presently. The parties have, upon advice of counsel, knowingly and voluntarily entered into the settlement agreement, and there is no evidence of fraud or collusion. Plaintiffs'

8

counsel are experienced trial lawyers and litigators, no doubt competent as to the FLSA and adequate settlement procedures. Moreover, plaintiffs have received adequate notice of the settlement and have not objected. Finally, based on the parties' own judgments as to the likelihood of success on the merits and the costs of litigation, the amount of the settlement is reasonable in relation to the potential recovery. In light of these factors, the court concludes that the settlement agreement, as a whole, is fair and reasonable.

## IV.

Based on the forgoing analysis, the court ORDERS as follows:

1. That the parties' joint motion to file under seal their joint motion to approve settlement be, and it hereby is, denied.

2. That the parties' joint motion to approve the settlement be, and it hereby is, granted.

The Clerk is directed to transmit copies of this written opinion and order to all counsel of record and any unrepresented parties.

ENTER: June 4, 2012

John T. Copenhaver, Jr.
United States District Judge